IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>THEODORE SMITH,<br><br>    Defendant. | CR 05-2422-TUC-DCB (GEE)<br><br>**REPORT AND RECOMMENDATION** |

The District Court referred this case to the Magistrate-Judge for hearing on pretrial motions. Hearing on defendant's Motion to Dismiss and Motion to Suppress was held on August 16, 2006. Upon consideration of all the evidence presented at the hearing and the arguments of respective counsel, the Magistrate-Judge recommends the District Court deny the defendant's motions.

## **CHARGE:**

It is charged that on November 23, 2005, the defendant knowingly and intentionally possessed with intent to distribute an amount of marijuana, 118 kilos, in violation of Title 21, U.S.C. §§841(a)(1) and 841(b)(1)(B)(viii).

Copies Distributed
A.B. 9/15/06

T. POORE, C. DURYEE, DCB, GEE

**MOTIONS:**

On April 21, 2006, the defendant filed a Notice of Anticipated Pretrial Motions. At the hearing on August 16, 2006, the court asked defense counsel about this Notice and he replied that only the motions for dismissal and suppression were at issue at this hearing; the other listed pretrial motions were moot.

Defendant argues the indictment must be dismissed because the "stop, detention, search and arrest of the defendant were beyond the jurisdictional powers of the Tribal [Police] Officer." Specifically, he argues the tribal police officer had: (1) no authority to either conduct a traffic stop and/or arrest of the defendant off tribal land, and (2) had no authority to arrest the defendant for a "'Federal Drug Crime off of Tribal Land." The defendant also argues the officer had no probable cause to search his vehicle following the traffic stop; therefore all evidence seized as a result of the unreasonable search and seizure must be suppressed.

**EVIDENCE:**

***Testimony of Lieutenant Kevin Shonk***

Shonk is a 15 year veteran of the Tohono O'Odham Police Department. He stated that AZ POST is an acronym for Arizona Peace Officers Standards and Trainings board. He was AZ POST certified in 1991 upon completion of a 13 week course at the Arizona Law Enforcement Training Academy (ALETA) (*see* Exhibit 2 attached), and since that time has annually completed the eight (8) hours of continuing training required to maintain his AZ POST certification.

On November 23, 2005, Shonk was on duty and in his service vehicle traveling westbound toward the Tohono O'Odham Nation, on State Highway 86. He saw an eastbound pewter-colored GMC Yukon passing another vehicle and, using his radar equipment, clocked it traveling 76 mph in a 65 mph zone. After completing the pass, the Yukon returned to the eastbound lane, but continued at a rate in excess of the speed limit. Shonk made a u-

1  turn and stopped the speeding vehicle–by activating his lights-- at milepost 149, three miles
2  from where he had first seen it. The driver immediately exited the vehicle, and although
3  Shonk told the driver three times to get back into the vehicle, the driver ignored his directions
4  and closed the car door. As Shonk approached, the driver appeared nervous and when asked
5  why he had exited the Yukon, the driver, who Shonk identified as the defendant, responded
6  by asking why he had been stopped.

7  Shonk testified it is standard practice once a traffic stop has occurred to direct the
8  driver to remain in the vehicle. From his past experience, it is his belief that when a driver
9  disregards this direction and exits the vehicle, the driver is trying to distract the officer from
10 approaching and/or looking into the vehicle. This was only the third time in his experience
11 that a driver has ignored his directions to remain in, or return to, the vehicle; the first time
12 the driver tried to assault him, and the second time the vehicle contained a large amount of
13 drugs.

14 When Shonk asked the defendant for his driver's license, the defendant responded
15 he had none. Shonk then asked if he had a license or other identification in the vehicle; the
16 defendant "started to turn toward the vehicle and then he turned back around" and denied
17 having any. At this time the two were standing close to the driver's door and Shonk testified
18 he smelled the odor of raw marijuana. He then looked into the driver's side window and saw,
19 on the seat behind the front seat, "a bundle of something wrapped in a tan paper, like
20 plastic–like a tan cellophane type wrap." Shonk testified that given the marijuana odor
21 emanating from the Yukon and the fact that on "hundreds" of occasions he had seen
22 marijuana bundles packaged like the one in the Yukon's back seat, he believed the defendant
23 was transporting marijuana. Shonk then opened the door behind the driver's door and saw
24 several more bundles on the vehicle's floor. Shonk then arrested the defendant and called for
25 backup.

26 On cross examination Shonk testified he was not on the Tohono O'Odham Nation

1  either when he first saw the Yukon or when he stopped and arrested the defendant. He stated
2  tribal police officers travel extensively on Highway 86, going to and from the reservation,
3  and it is "common practice" for them to make traffic stops on 86 outside the reservation
4  boundaries. Shonk makes at least 20 traffic stops monthly off the reservation. He stated that
5  after he discovered the marijuana he requested assistance from the tribal police headquarters;
6  he did not contact DPS nor ask that DPS be contacted.

### *Testimony of Gilbert Alegria*

Alegria is a private investigator hired by the defense. Part of his job was to inspect and re-weigh the marijuana seized from the defendant. The marijuana was then in the possession of the U.S. Customs agency in Nogales, AZ. He inspected 8 or 9 wrapped bundles of marijuana seized following the defendant's arrest. He examined some of the bundles for odor by either putting his nose "right up to the bundle" or "actually cupp[ing] my hands over my nose and mouth and up against the bundle and –smelled the bundle individually." He testified he did not get a "distinct" or "very strong odor" of marijuana from the bundles. However, when a bundle was opened for re-weigh he sensed "a very strong odor" of marijuana. Alegria could not recall the exact date he inspected the marijuana bundles, but stated it was prior to March 28, 2006, the date he inspected the Yukon.

On March 28, 2006, Alegria inspected and photographed the Yukon which was then back in the possession of its owner, the defendant's girlfriend. Exhibits A, B, and C (attached hereto) are photographs of the Yukon taken by Alegria "around noon time", with the vehicle facing east. Alegria testified that because of the tinted windows he could not see into the Yukon through the passenger windows on the driver's side. However, if "if I tilted my head and looked towards the driver's window, I could see some light coming through there."

On cross-examination Alegria admitted that the tint on the windows on the

driver's door was lighter than that on the rear windows. He also agreed the odor of marijuana dissipates over time and the odor is stronger in a small, confined area than in a large room.

### *Testimony of Theodore Smith*

The defendant testified the Yukon's windows were tinted before November 23, 2005. Soon after he had passed a vehicle on that date, he saw flashing lights and pulled off the road, exited the Yukon, closed the door, and stood at the rear of the driver's side door –"right by the door handle." As Officer Shonk approached him the defendant asked the reason for the stop. He testified that Shonk did not say anything; he walked up to the Yukon and opened the passenger door behind the driver's door. The passenger door did not hit the defendant. Shonk then stepped back, pulled out his gun, and began yelling at the defendant to get on the ground. Smith also testified that a piece of material which appears on the rear passenger seat in pictures taken shortly after his arrest (*see* Exhibits 4 and 5 attached hereto) is, in fact, a reversible black and white jacket which he himself had placed over the only marijuana bundle on the rear seat. Smith stated he did not detect any marijuana odor while he was driving. He also testified Shonk never told him the reason for the stop and never gave him a speeding citation.

On cross-examination Smith stated the windshield and front windows on the driver's and passenger's sides are not tinted as dark as those in the rear, so that you can see more clearly into the Yukon through those windows. He also denied he was speeding except in his attempt to pass another vehicle. He admitted he knew he had a load of marijuana in the Yukon. He testified he was not nervous or distracted during the stop. He admitted having used cocaine the night before and morning he was stopped; but denied the cocaine had affected his perception of what occurred during the stop by Shonk.

### **DISCUSSION:**
### *Officer Jurisdiction*

        The defendant argues the indictment should be dismissed because: (1) as a Tohono O'Odham tribal officer, Shonk lacked jurisdiction to perform a traffic stop and/or arrest off the reservation; and (2) Shonk lacked jurisdiction to arrest the defendant for a federal drug crime off of the reservation. While the defendant cites the general principle that a valid arrest may not be made outside the territorial jurisdiction of the arresting authority for whom the officer is employed, he cites no statutory or case authority to support his conclusion that the tribal police officer had no authority to make the instant stop or arrest.

        The government relies on *State v. Nelson,* 90 P.3d 206 ( Ariz. App. Div. 1 2004), which this court believes is controlling authority. In *Nelson,* a tribal police officer was alerted to a suspected drunk driver and stopped the driver in the city of Mesa, not on tribal land. The defendant argued that even though the tribal officer was AZ POST certified, he lacked authority to make the stop because he was neither cross-deputized by the Department of Public Safety nor in hot pursuit. *Id.* at 209. Relying on A.R.S. §13-3874(A), the court concluded, "A law enforcement official employed by the governing body of an Indian tribe and certified by the AZ POST may conduct a brief stop and detention of a vehicle, in accordance with *Terry v. Ohio* ... outside the reservation, while engaged in the scope of employment." *Nelson* at 209. The defendant seeks to distinguish the present case by arguing that Shonk never observed Smith driving on the reservation on November 23rd. However, given the breadth of the wording of the Arizona court's holding in *Nelson,* this court finds the defendant's argument unavailing.

        The defendant offers no authority to support his argument that a duly authorized state or tribal law enforcement officer may not arrest an individual committing a crime which may be prosecuted under state or federal law.

        This court concludes Officer Shonk had jurisdictional authority to both stop the defendant who he had determined was speeding off tribal land and to arrest the defendant for a crime subsequently prosecuted by federal authorities.

1  ***Motion to Suppress***

2          The defendant argues Officer Shonk did not have probable cause to search his
3  vehicle.

4          Shonk testified that after the defendant stopped and exited his vehicle, Shonk
5  approached the driver's door of the Yukon where the defendant was standing and not heeding
6  his (Shonks's) directions to get back in. Shonk smelled the odor of "raw marijuana" and
7  when he looked through the driver's side window toward the back seat area he saw a bundle
8  wrapped in tan colored cellophane paper. From his past experience and training, these
9  observations led him to believe the defendant was transporting a large amount of marijuana.
10 He then opened the back door of the vehicle and observed additional similarly wrapped
11 bundles. At that point he placed the defendant under arrest. He testified that in his 15 years
12 of experience he had seen bundles of marijuana "hundreds of times" and had seen several
13 thousand pounds of marijuana wrapped like those in the defendant's vehicle. He is also
14 familiar with the "very distinct odor" of raw marijuana.

15         This court discounts the defendant's testimony that Shonk never spoke to him
16 before arresting him, e.g., never told him to get back into the Yukon. This court also
17 discounts the defendant's testimony that, within the confines of the Yukon, five or six bundles
18 of marijuana, totaling 118 kilos, emitted no odor while he was driving. It is also credible the
19 odor would linger outside the vehicle, after the defendant had opened and shut the driver's
20 door. The fact that the odor from the bundles may have dissipated somewhat during the three
21 or four months time between the stop on November 23, 2005, and when the investigator
22 Alegria re-weighed them in February or March, 2006, does not undermine Shonk's testimony.
23 Moreover, it was uncontroverted that the driver's side window was tinted less that the
24 passenger windows and that a person outside the Yukon could see into the rear of the vehicle
25 when looking trough the driver's side window.

26         This court concludes Shonk's observations following the stop was sufficient to
27
28

establish probable cause to believe the defendant was transporting marijuana and therefore Shonk was justified in opening the back door of the Yukon.

**RECOMMENDATION:**

In view of the foregoing it is recommended that after its independent review of the record the District Court **DENY** the defendant's Motion to Dismiss and Motion to Suppress. This Report and Recommendation is being faxed to all counsel on this date. Each counsel may serve and file objections within 10 days. If objections are timely filed, the party's right to de novo review may be waived. If objections are filed, they should be directed to the District Court by omitting the magistrate's initials from the caption, i.e., CR-05-02422-TUC-DCB.

DATED this 15th day of September, 2006.

Glenda E. Edmonds
United States Magistrate Judge